IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00239-PAB-KLM

FRANKY L. SESSION,

    Plaintiff,

v.

VANESSA CARSON, Health Service Administrator,
LINDSEY E. FISH, Medical Doctor,
TEDDY L. LAURENCE, Physician Assistant,
TEJINDER SINGH, Physician Assistant,
ROBERT L. MANGUSO, Medical Doctor,
TIMOTHY R. BROWN, Medical Doctor, and
CORRECTIONAL HEALTH PARTNERS, Insurer, and
DOE 1, Correctional Officer,

    Defendants.
_____

# ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court on Plaintiff's **Motion Requesting Court Order to Only Allow CD's Holding X-rays and CAT Scans Images to Be Viewed/Scanned in His Presence** [#72][1] and on Plaintiff's **Motion Requesting Court Order to Return CD's Holding X-rays and CAT Scan Images** [#73] (collectively, the "Motions"). Defendants did not file Responses to the Motions. The Court has reviewed the Motions, the entire case file, and the applicable law. Based on the following, the Motions [#72, #73] are **DENIED without prejudice**.

---

    [1] "[#72]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

-1-

Plaintiff, who is proceeding pro se,[2] is presently incarcerated with the Colorado Department of Corrections ("CDOC") at Colorado Territorial Correctional Facility ("CTCF"). On October 21, 2018, Plaintiff requested medical records from Arkansas Valley Regional Medical Center ("AVRMC") in connection with this lawsuit. [#73] at 1. On November 2, 2018, AVRMC provided him with documentation and a CD containing Plaintiff's X-rays and CAT scan images of his "upper, center, lower abdomen", left knee, and lower left side rib cage area, which had been used in connection with diagnoses made by Defendants Teddy L. Laurence and Tejinder Singh. *Id.* On November 16, 2018, CTCF's legal librarian Ms. Russell "came into possession of the CD . . . which she confiscated and refused [Plaintiff's] request to have access and review the information on the CD."[3] *Id.* The CD was "given to Major Filer and placed in evidence somewhere" because "CTCF will only allow [Plaintiff] to store and have immediate access to CD's [sic] that are sent from the Court or a Lawyer." *Id.* at 2.

Plaintiff asks the Court for the following relief: (1) an order that the confiscated CD

---

[2] The Court must construe the filings of a pro se litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, pro se litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

[3] The Court notes that the record here is inconsistent, in that Plaintiff states that he "informed CTCF legal librarian Ms. Russell that, 'he would consent to her reviewing and scanning the CD for security purposes in front of him,'" but that "Ms. Russell refused to quickly scan and review the CD in the presence of [Plaintiff] for some unknown reason, causing [Plaintiff] to deny Ms. Russell consent to quickly review and scan the CD . . . ." [#72] at 1. Ms. Russell reports the incident as follows: "In abundance of caution, I opened the envelope today in your presence and spoke to you regarding the cd. You stated you did not wish to have me review the contents as it would violate your HIPPA rights and informed me that it contained medical information." [#73] at 17.

be returned to the CTCF legal library; (2) an order allowing CDs provided by AVRMC and other medical entities "to be safely and legally stored in CTCF legal library;" (3) an order allowing Plaintiff access to these CDS "upon request during legal library appointments;" and (4) an order allowing Plaintiff to be present when staff members scan and review his CD(s) for security reasons so he can protect his right to privacy of medical records. *See* [#72, #73].

Electronic media sent to offenders in CDOC facilities that is connected to litigation management is governed by Administrative Regulation 750-03 § IV.M. In relevant part, this regulation provides that "[l]egal materials contained on electronic/audio media will be allowed into a correctional facility only when sent by a court or an attorney" and that "[e]lectronic/audio media sent in by private parties, family members, friends, etc., is not allowed." A.R. 750-03 § IV.M.4. The regulation further provides:

> Due to legitimate penological concerns related to safety and security, the legal assistant will make a cursory review of all electronic/audio media to ensure that they are of a legal nature; do not contain personal communications; personal pictures; maps; victim information; phone numbers, addresses, social security, SID, or FBI numbers of victims, witnesses or employees; do not divulge personal information regarding other incarcerated individuals; do not contain training manuals, restricted regulations, security threat group identifications, etc.

A.R. 750-03 § IV.M.6.

Fed. R. Civ. P. 65(a) and (b) govern preliminary injunctions and temporary restraining orders. "Where the opposing party has notice, the procedure and standards for issuance of a temporary restraining order mirror those for a preliminary injunction." *Emmis Commc'ns Corp. v. Media Strategies, Inc.*, No. 00-WY-2507CB, 2001 WL 111229, at *2 (D. Colo. Jan. 23, 2001) (citing 11A Charles Alan Wright, et al., Federal Practice and

Procedure § 2951 (2d ed.1995)). Here, because Defendants were given notice and an opportunity to respond (even though they did not), the Court analyzes the Motions [#72, #73] under the standards for issuance of a preliminary injunction.

Injunctive relief is an extraordinary remedy which should only be granted when the moving party clearly and unequivocally demonstrates its necessity. *See Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). In the Tenth Circuit, a party requesting injunctive relief must clearly establish the following: (1) the party will suffer irreparable injury unless the injunction issues; (2) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits. *Id.* "The purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance." *Id.* at 1267. Moreover,

> [b]ecause the limited purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held, we have identified the following three types of specifically disfavored preliminary injunctions . . . (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that [he] could recover at the conclusion of a full trial on the merits.

*Id.* at 1258-59 (citations omitted). These disfavored injunctions are "more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Id.* at 1259.

As noted above, Plaintiff seeks an injunction requiring CDOC to allow him to keep and access electronic media in the CTCF legal library, even if not sent by a court or an attorney. *See* [#73]. Thus, the relief Plaintiff seeks would alter the status quo rather than

preserve it and would also require CDOC, a non-party, to act. Therefore, the injunctive relief sought by Plaintiff "constitutes a specifically disfavored injunction" that "must be more closely scrutinized." *Schrier*, 427 F.3d at 1261. Accordingly, the Motion [#73] must be denied unless Plaintiff's "right to relief [is] clear and unequivocal." *Id.* at 1258.

The law is well-established that prison management functions should be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. *See, e.g.*, *Meachum v. Fano*, 427 U.S. 215 (1976). Courts should grant injunctive relief involving the management of prisons only under exceptional and compelling circumstances. *Taylor v. Freeman*, 34 F.3d 266, 269-70 n.2 (4th Cir. 1994); *see also Citizens Concerned for Separation of Church & State v. Denver*, 628 F.2d 1289, 1299 (10th Cir. 1980). Indeed, the Court of Appeals for the Tenth Circuit has stated that it "abhor[s] any situation or circumstance requiring the intervention of the federal courts in matters involving the administration, control and maintenance by the sovereign states of their penal systems. It is a delicate role assigned to the federal courts to display that restraint so necessary in the maintenance of proper federal-state relations." *Battle v. Anderson*, 564 F.2d 388, 392 (10th Cir. 1977) (quotation omitted). As such, "intervention in the management of state prisons is rarely appropriate when exercising the equitable powers of the federal courts. . . . [This] is especially true where mandatory injunctive relief is sought and only preliminary findings as to the plaintiff's likelihood of success on the merits have been made." *Taylor*, 34 F.3d at 269 (citations omitted).

Plaintiff seeks an order against a non-party, i.e., Rick Raemisch as Executive Director of the Colorado Department of Corrections. The Tenth Circuit applies a heightened standard for litigants seeking injunctive relief against non-parties. *Andrews v.*

*Andrews*, 160 F. App'x 798, 800 (10th Cir. 2005). "While the non-party status of an injunction's target may [not] be a conclusive impediment, it nevertheless heightens the hurdle that must be cleared to obtain the injunction: not only must the motion advance considerations satisfying the traditional injunction factors . . . but those considerations must also constitute . . . 'appropriate circumstances' . . . to justify issuing an injunction against a non-party." *Id.* The "appropriate circumstances" referred to by the *Andrews* court require a non-party to be "in a position to frustrate [or facilitate] the implementation of a court order or the proper administration of justice." *Id.* at 799 (quoting *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 174 (1977)).

Here, Plaintiff has failed to demonstrate that he will suffer irreparable injury unless the injunction issues. *See Schrier*, 427 F.3d at 1258. For example, in *Pope v. Carns*, No. CIV-07-1331-F, 2009 WL 3614789, at *6 (W.D. Okla. Oct. 28, 2009), the incarcerated plaintiff asked the court to issue an injunction against a non-party prison facility, "requiring it to allow access to all necessary cases and state statutes." The court there held that "Plaintiff does not indicate what administrative measures he has taken to achieve the relief sought by his request for injunctive relief, and his failure to employ those available remedies effectively prevents him from showing . . . irreparable harm . . . ." *Pope*, 2009 WL 3614789, at *5. Similarly, here, because Plaintiff has not shown he has attempted to use CDOC's internal administrative procedures to fulfill his alleged need, see A.R. 850-04,[4] he has not met the first factor of the preliminary injunction test, i.e., that he will suffer

---

[4] AR 850-04 "establish[es] requirements and procedures for offenders to file informal complaints and informal grievances." AR 850-04 § II. Plaintiff's requests here do not appear to fall within any of the listed exceptions to the grievance process. *See* AR 850-04 § IV.D.2.

irreparable injury *unless* the injunction issues.

The Court notes, however, that this litigation is in its earliest stages, and thus Plaintiff's request is denied without prejudice based on the following considerations. First, Plaintiff may opt to take advantage of CTCF's administrative grievance procedures. Second, Plaintiff may opt to request paper copies of the images contained on the CD from AVRMC and other medical entities to ascertain whether they are sufficient for purposes of this litigation. Third, any future request by Plaintiff must specifically connect his need for this electronic media to his specific legal claims in order to show that "irreparable injury" will occur in the absence of the relief requested here. Fourth, the Court will only entertain a renewed request to enjoin Rick Raemisch after a Scheduling Conference has been held, given that it is clear that no "irreparable injury" can be shown prior to that time. In short, the Court finds that Plaintiff's requests are simply premature.

Accordingly,

IT IS HEREBY **ORDERED** that the Motions [#72, #73] are **DENIED without prejudice**.

Dated: January 24, 2019

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge